UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SOPHIA I.,[1]

      Plaintiff,

  v.

MARTIN O'MALLEY,
Commissioner of Social Security,

      Defendant.

Case No. 2:22-cv-1740
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Sophia I. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.  PROCEDURAL HISTORY

On May 30, 2019, Plaintiff filed her application for benefits,[3] alleging that she has been disabled since October 15, 2018. R. 92, 124, 204–15. The application was denied initially and upon reconsideration. R. 126–33. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 135–49. ALJ Ricardy Damille held a hearing on November 20, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34–59. In a decision dated January 29, 2021, ALJ Damille concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 30, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–28 ("2021 decision"). That decision became final when the Appeals Council declined review on February 3, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 20, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 17.[4] On March 21, 2023, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

II.  LEGAL STANDARD

   A.  **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3] Plaintiff had filed previous applications for benefits. R. 94, 108. ALJ Sharon Allard denied one of those prior applications on January 24, 2018, R. 69–86 ("the 2018 decision"), which the Court discusses later in this decision.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

3

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

B.      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DAMILLE'S 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 28 years old on the date on which her application was filed. R. 27. At step one, ALJ Damille found that Plaintiff had not engaged in substantial gainful activity from May 30, 2019, that application date, through the date of the decision. R. 17.

At step two, ALJ Damille found that Plaintiff suffered from the following severe impairments: diabetes; peripheral neuropathy; right knee tendinitis; obesity; depression; anxiety; and intellectual disability. *Id*. ALJ Damille also found that Plaintiff's diagnosed asthma was not severe. *Id*.

At step three, ALJ Damille found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing, including Listing 12.05, which addresses intellectual impairments. R. 17–20.

At step four, ALJ Damille found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 20–26. ALJ Damille also found that this RFC did not permit the performance of Plaintiff's past relevant work as a package handler. R. 26.

At step five and relying on the testimony of the vocational expert, ALJ Damille found

7

that a significant number of jobs–*e.g.*, jobs as a document prep worker, a table worker, and an assembler–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 27. ALJ Damille therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 30, 2019, the application date, through the date of the decision. R. 28.

Plaintiff disagrees with these findings and claims a denial of her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. She asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 16. The Commissioner takes the position that his decision should be affirmed in its entirety because the 2021 decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15.

## IV.   DISCUSSION

Plaintiff advances several arguments including, *inter alia*, her argument that ALJ Damille violated Plaintiff's due process rights when the ALJ relied on evidence—two IQ test reports generated in 2016—that was not included in the administrative record. *Plaintiff's Brief*, ECF No. 13, pp. 32–38; *Plaintiff's Reply Brief*, ECF No. 16, pp. 12–15. *See also* R. 39, 319–24.[5] Plaintiff contends that the failure to include these IQ tests and ALJ Damille's reliance on these tests violated Plaintiff's due process rights because neither Plaintiff nor the reviewing and consulting experts had the opportunity to review these tests, because Plaintiff could not challenge ALJ Damille's discounting of these tests, and because Plaintiff was precluded from relying on these

---

[5] These records are not included in the administrative record filed with this Court.

tests in supporting her claim for benefits. *Plaintiff's Brief*, ECF No. 13, pp. 32–38; *Plaintiff's Reply Brief*, ECF No. 16, pp. 12–15. Plaintiff contends that ALJ Damille's error in this regard is not harmless because at least one of the IQ scores from the tests—a full-scale score of 68–could have been dispositive at step three when ALJ Damille, having discounted the IQ tests, found that Plaintiff did not meet or medically equal a listed impairment, including Listing 12.05, which addresses intellectual impairments. *Id*.

For his part, the Commissioner argues that any evidence from 2016, *i.e.,* a prior period not before the ALJ, is immaterial and that ALJ Damille did not rely on these IQ tests in denying Plaintiff's current claim for benefits. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, p. 10. The Commissioner further contends that ALJ Damille construed these tests to Plaintiff's benefit but ultimately, and reasonably, concluded that Plaintiff did not meet Listing 12.05. *Id.* at 10–14.

The Commissioner's arguments are not well taken. "[A]dministrative hearings are subject to requirements of due process." *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 385 (D.N.J. 2013) (citations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("accept[ing] the proposition[] . . . that procedural due process is applicable to the adjudicative administrative proceeding involving 'the differing rules of fair play, which through the years, have become associated with differing types of proceedings") (citations omitted). "[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Under the Social Security Act, "the Commissioner shall give [the] applicant... reasonable notice and opportunity for a hearing with respect to [the Commissioner's disability] decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact

and such decision." 42 U.S.C. § 405(b)(1) (emphasis added). More specifically,"[t]he administrative law judge *must base the decision on* the preponderance of *the evidence* offered at the hearing or *otherwise included in the record*." 20 C.F.R. § 416.1453(a) (emphasis added). However, a claimant must show prejudice to justify remand based on an alleged violation of due process rights. *See Mayes v. Social Sec. Admin.*, 190 F. App'x 183, 186 (3d Cir. 2006) (finding that, although a SSI claimant "has a due process right to a hearing that is fundamentally fair[,]" "lack of counsel, on its own, is not a sufficient ground for a remand, which is only appropriate if [the claimant] can show that he was prejudiced").

By way of background, at step three of the sequential evaluation in the 2018 decision, a different ALJ considered whether Plaintiff met or medically equaled a listed impairment, including Listing 12.05:

> Turning back to listing 12.05, paragraph A requires the following:
>
> > 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
> >
> > 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
> >
> > 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> In this case, these requirements are not met because the claimant could participate in standardized testing, and completed several such assessments in October of 2016 (Ex. 11F). She also reported being able to dress, bathe, and use the toilet independently. The claimant reported that she occasionally needed reminders from her sister to perform these tasks, but she could still complete them on her own. She also reported doing some household chores such as sweeping the floor and washing the dishes (Ex. 8E).
>
> Paragraph B requires the following:

10

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:
>
>> a. Understand, remember, or apply information (see 12.00El); or
>>
>> b. Interact with others (see 12.00E2); or
>>
>> c. Concentrate, persist, or maintain pace (see l2.00E3); or
>>
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met. The claimant obtained a WAIS-IV Full Scale IQ score of 68 in October of 2016. This score fell within the extremely low range. However, the examiner noted that the claimant's performance on some tasks were inconsistent, causing for certain measures to be deemed invalid. Conflicting results noted lack of attention to items measuring reliability, possible over-exaggeration of symptoms, and guarded response patterns. The examiner noted that the claimant's effort and testing results should be interpreted with caution (Ex. 11F, pg. 6). The claimant's prior WAIS-IV score was 75, indicating that she was functioning in the borderline range (Ex. 5F). In addition, the claimant does not show evidence of significant deficits in adaptive functioning, as described earlier. She has only moderate limitations in understanding, remembering, and carrying out instructions and in maintaining concentration, persistence, and pace. Accordingly, the undersigned finds that the claimant's borderline intellectual functioning does not meet Listing 12.05.

R. 74–75; *see also* R. 77 (reflecting that, at step four, that ALJ considered that, in 2009, Plaintiff's school psychologist found that Plaintiff's "intellectual assessments indicated that her cognitive functioning was in the borderline range" and that Plaintiff "obtained a Full Scale IQ score of 75").

During the 2020 administrative hearing before ALJ Damille, Plaintiff's counsel specifically requested that the IQ tests discussed by the prior ALJ be made a part of the record. R. 39. ALJ Damille responded that she would "see what I can do concerning that" and would "make a note of [counsel's] request." *Id*. In fact, however, the IQ tests were not included in the record. Nevertheless, ALJ Damille expressly referred to those IQ tests at step three in concluding that Plaintiff neither met nor medically equaled any listed impairment, including Listing 12.05:

> Turning back to listing 12.05, this listing is based on the three elements that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.
>
> The required level of severity for this disorder is met when the requirements in paragraphs A or B are satisfied.
>
> Paragraph A requires the following:
>
>> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>>
>> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
>>
>> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> In this case, these requirements are not met because disorder began prior to your attainment of age 22. In this case, these requirements are not met because the claimant could participate in standardized testing, and completed several such assessments in October of 2016 (*Ex. 11F*). She also reported being able to dress,

bathe, and use the toilet independently. The claimant reported that she occasionally needed reminders from her sister to perform these tasks, but she could still complete them on her own. She also reported doing some household chores such as sweeping the floor and washing the dishes (Exhibit 8E).

Paragraph B requires the following:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:
>
>> a. Understand, remember, or apply information (see 12.00E1); or
>>
>> b. Interact with others (see 12.00E2); or
>>
>> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>>
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because <u>the disorder began prior to your attainment of age 22</u>. In this case, these requirements are not met. *As noted in the claimant's prior Administrate Law Judge decision (Exhibit B1A), the claimant obtained a WAIS-IV Full Scale IQ score of 68 in October of 2016. This score fell within the extremely low range. However, the examiner noted that the claimant's performance on some tasks were inconsistent, causing for certain measures to be deemed invalid. Conflicting results noted lack of attention to items measuring reliability, possible over-exaggeration of symptoms, and guarded response patterns. The examiner noted that the claimant's effort and testing results should be interpreted with caution. The claimant's prior WAIS-IV score was 75, indicating that she was functioning in the borderline range (Exhibit 5F). In addition, the*

13

> claimant does not show evidence of significant deficits in adaptive functioning, as described earlier. She has only moderate limitations in understanding, remembering, and carrying out instructions and in maintaining concentration, persistence, and pace. Accordingly, I find the claimant's borderline intellectual functioning does not meet Listing 12.05.

R. 19–20 (emphasis added). ALJ Damille went on to again consider Plaintiff's IQ scores at step four of the sequential evaluation:

> At the hearing, claimant's attorney stated that the claimant's IQ scores was reported as being 68 and 75 and was addressed in a prior Administrative Law Judge decision (Exhibit B1A). *He requested that the IQ scores be made part of this record*. The prior decision notes that in October 2016, the claimant obtained a WAIS-IV score of 68, which fell in the extremely low range of intellectual functioning. She scored in the borderline range for certain subtests including processing speed and perceptual reasoning, and she demonstrated the most difficulty on the Verbal Comprehension Index. However, the examiner also found that conflicting results noted lack of attention to items measuring reliability, possible over-exaggeration of symptoms, and guarded pattern response. She also found that the claimant's seeking of social security income might affect her test results, and noted that the claimant's test results should be interpreted with caution. Overall, her executive functioning and attentional skills appeared to be intact (Exhibit B1A at 10).

R. 25 (emphasis added). As previously noted, although ALJ Damille relied, at least in part, on the IQ tests in denying Plaintiff's application, the ALJ did not include those tests in the administrative record. In appealing to the Appeals Council from the ALJ's decision, Plaintiff's counsel complained that Plaintiff had thereby been denied the opportunity to review the tests and to present additional arguments in support of her claim:

> **3. Plaintiff requests that the prior file IQ test be made available in order to submit additional arguments regarding the Listing 12.05 analysis, to the ones submitted below.**
>
> The current ALJ Decision refers to a prior ALJ decision's language concerning an earlier IQ test result not in the record, and uses it to reject Ms. I['s] claims that she meets the requirements of Listing 12.05 (ALJ Decision, P. 6). However, the document containing the prior IQ results from October 2016 was not made available to claimant or counsel prior to issuance of the current ALJ decision. Ms. I[] objects to the ALJ decision on grounds that it effectively used evidence not in record and not proffered to the claimant evidence that was used as a partial basis for its findings.

R. 323; *see also* R. 324 (detailing additional arguments related to IQ tests). The Appeals Council did not expressly address Plaintiff's request or contention in this regard, nor did it otherwise add the IQ tests to the administrative record. R. 1–6.

As previously discussed, Social Security proceedings are subject to due process requirements and applicants are entitled to full and fair hearings, *see Richardson*, 402 U.S. at 401; *Ventura*, 55 F.3d at 902; *Lippincott*, 982 F. Supp. 2d at 385, and an ALJ is required to "base the decision on the preponderance of the evidence offered at the hearing or *otherwise included in the record*." 20 C.F.R. § 416.1453(a) (emphasis added). In the present case, although the Commissioner contends that "ALJ [Damille] did not use this evidence to deny the current claim as Plaintiff suggests[,]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, p. 10, the record belies that contention. *See* R. 19–20, 25.[6] In failing to assure the inclusion of these tests in the administrative record and making the tests available to Plaintiff,[7] ALJ Damille denied Plaintiff the opportunity to review and defend the IQ test and to argue that she met or medically equaled Listing 12.05. When the ALJ then expressly relied on the IQ tests in denying Plaintiff's claim, the ALJ denied Plaintiff a full and fair hearing, resulting in a due process violation that the Court cannot conclude is harmless. *See Whinery v. Kijakazi*, No. CIV-22-171-JAR, 2023 WL 6785828, at *2–3 (E.D. Okla. Oct. 13, 2023) (finding a due process violation where "[i]n concluding that Claimant's spine impairments were nonsevere, the ALJ relied in part on a 2014 MRI. This medical record is mentioned in the summary of Claimant's medical history contained

---

[6] Moreover, ALJ Damille's express reliance on these IQ tests undermines the Commissioner's assertion that the IQ tests from a "prior period" are not material. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, p. 10.

[7] The Court notes that, although ALJ Damille cited "Exhibit 5F" when referring to Plaintiff's WAIS-IV score of 75, R. 20, that exhibit actually reflects only treatment notes from James Totten, M.D., a foot and ankle specialist, and does not include this IQ test. R. 779–86.

within Claimant's Disability Determinations but can be found nowhere else in the record. . . . Clearly, the ALJ relied on this record in making his step two findings; however, the medical report is not contained in the record and the Claimant had no opportunity to rebut this evidence"); *Dellinger v. Kijakazi,* No. CIV-20-176-JFH-SPS, 2021 WL 4270174, at *3–4 (E.D. Okla. Aug. 31, 2021), *report and recommendation adopted sub nom. Dellinger v. Comm'r of Soc. Sec. Admin.*, No. CIV-20-176-JFH-SPS, 2021 WL 4269354 (E.D. Okla. Sept. 20, 2021) (remanding action were "*the ALJ improperly recited verbatim excerpts from the ALJ opinion from the prior adjudication that were related to evidence not contained in the present record*" and the Court disagreed that the ALJ's recitation was harmless because "[t]he ALJ clearly relied on it in assessing the consistency of the claimant's statements, as well as the evidence in the record. In addition to a due process violation, this is also certainly improper picking and choosing") (emphasis added); *Grass v. Berryhill*, No. 17-CV-00749-STV, 2019 WL 1450595, at *10 (D. Colo. Apr. 2, 2019) ("Because the ALJ relied upon a medical opinion that was not made part of the record until after the June 8, 2016 hearing, the Court finds that Plaintiff's counsel was precluded from rebutting the DMB Opinion or examining Plaintiff, the vocational expert, and/or DMB in light of that evidence at the hearing. Plaintiff thus was denied her due process right to a full and fair hearing and the ALJ's decision must be reversed."); *cf. Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir. 1989) ("We thus hold that when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested."); *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983)

("An ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report."); *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979) (concluding that the ALJ's reliance on expert reports denied the claimant's due process rights "the claimant was afforded no opportunity to subpoena and cross-examine the declarant").

The Commissioner argues that Plaintiff cannot establish a due process violation and/or prejudice flowing from any such violation because ALJ Damille found that Plaintiff did not meet Listing 12.05 for reasons in addition to the IQ test score of 68. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, pp. 11–12. That argument is unavailing. In addition to the denial of Plaintiff's right to due process, ALJ Damille's step three analysis erred in other respects as well. For example, although Listing 12.05 requires, *inter alia*, that the claimant's intellectual disorder "began prior to your attainment of age 22[,]" ALJ Damille stated the requirements of the Listing "are *not met because disorder began prior to your attainment of age 22*." R. 19 (emphasis added). Additionally, ALJ Damille cited to "Ex. 11F" in finding that the Listing requirements "are not met because the claimant could participate in standardized testing, and completed several such assessments in October of 2016. . . . *Id*. However, Exhibit 11F contains only orthopedic notes from Plaintiff's podiatrist. R. 962–68. Similarly, ALJ Damille cited "Exhibit 8E" in stating that Plaintiff reported being able to perform self-care (dress, bathe, and use the toilet) independently even though she occasionally needed reminders from her sister to complete them and that Plaintiff also "reported doing some household chores such as sweeping the floor and washing the dishes. . . ." R. 19. However, Exhibit 8E, the Field Office's Disability Report, does not reflect any such reports or evidence. R. 298–99.

In short, ALJ Damille's confusing and contradictory findings, as well as the ALJ's reliance on exhibits that do not support the proposition for which they were cited, render the step three analysis incomprehensible. An ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Here, ALJ Damille's errors in this regard render it impossible for the Court to follow the ALJ's reasoning and precludes judicial review. *See Diggin v. Saul*, No. CV 19-0022, 2019 WL 3495593, at *10 (E.D. Pa. July 31, 2019) ("Inadequate discussion that leaves a court to speculate on what evidence led the ALJ to the conclusions set forth in the decision precludes any meaningful judicial review.") (citations omitted).

This Court therefore concludes that remand of the matter is required in order to enable Plaintiff to examine and address all relevant evidence.[8] Moreover, remand is appropriate even if the Commissioner might again conclude that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16,

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for an opportunity for Plaintiff to address the IQ tests and for additional consideration of Plaintiff's claim at step three, the Court does not consider those claims.

2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 12, 2024                                                  *s/Norah McCann King*
                                                                                    NORAH McCANN KING
                                                                           UNITED STATES MAGISTRATE JUDGE